UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIGUEL PINEDA, | ) |
| Plaintiff, | ) Case No. 08 CV 3437 |
| v. | ) Judge John W. Darrah |
| JORGE ARTEAGA CORP., doing business as GUADALAJARA RESTAURANT; JOHN VERNER; and MICHAEL CERAMI, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Miguel Pineda ("Pineda"), brings this Section 1983 action against Defendants, Jorge Arteaga Corp. ("Arteaga"), John Verner ("Verner") and Michael Cerami ("Cerami"). Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Docket No. 25.) For the reasons stated below, the motion is denied in part and granted in part.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint." *Christensen v. County of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir.

2008) (internal quotations omitted) (*Tamayo*). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff, all well-pleaded factual allegations are accepted as true and all reasonable inferences are construed in the plaintiff's favor. *Tamayo*, 526 at 1081.

However, plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1959 (2007) (*Bell Atlantic*). Put differently, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 S. Ct. at 1974. The amount of factual allegations required to state a plausible claim for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Lemont*, 520 F.3d 797, 803 (7th Cir. 2008). A dismissal is proper only if there is no set of facts consistent with the allegations in the complaint upon which relief could be granted. *Latuszkin v. Chicago*, 250 F.3d 502, 504 (7th Cir. 2001).

## BACKGROUND

The following facts in Plaintiff's Complaint are accepted as true for the purposes of this motion. At all times relevant to the facts of this case, Verner and Cerami were employed as Correctional Officers at the Cook County Sheriff's Department. They were also independently hired by the owner of Arteaga to work security at Arteaga's restaurant located at 375 S. Harlem Avenue, in Berwyn, Illinois. On August 24, 2007, Pineda was a patron at Arteaga. That same night, Verner and Cerami were working as security guards. Both Verner and Cerami were wearing shirts that said "police," which had been provided to them by Arteaga.

While at the restaurant, another patron punched Pineda in the mouth. Following the incident, Verner directed Pineda to go to the bathroom to wash up. In the bathroom, Verner and Cerami approached Pineda; and although Pineda was not acting belligerently or violating any

laws, Verner and Cerami forcibly removed him from the restaurant. Verner grabbed Pineda around the neck, and Cerami twisted his arm behind his back. Together, Verner and Cerami threw Pineda down a flight of stairs and then proceeded to stomp on him and beat him. In addition, Verner stole $300 in cash from Pineda. Following the beating, Verner asked Pineda if he had any weapons in his car, to which Pineda said that he did not. Pineda left immediately; and as he drove, he called the police for assistance. The police directed him to go back to the restaurant, where several police officers came to investigate Pineda's claims. Verner and Cerami identified themselves to the police as Cook County Correctional Officers.

Arising from these facts, Pineda alleges an Illinois state-law claim of battery against all the Defendants (Count I) and constitutional claims of excessive force against all Defendants (Count II) under 42 U.S.C. § 1983. Pineda demands both compensatory and punitive damages against all Defendants for both Counts.

## ANALYSIS

*Count II – Section 1983 Claim against Defendants Verner and Cerami*

In Count II, Plaintiff alleges that Verner and Cerami violated his Fourth and Fourteenth Amendment rights to be free from excessive force by physically beating him at Arteaga. Pineda contends that Defendants were acting under the color of the law when they physically abused him and stole money from him and that their actions were the direct and proximate cause of his injuries. Pineda asserts that as correctional officers, Verner and Cerami "were empowered with the same powers and duties of local law enforcement officers, despite being assigned as jail guards at the time of the incident." (Pl. Mem. at 6.) On this point, Plaintiff relies on *Gibbs v. Madison County Sheriff's Dep't*, 760 N.E.2d 1049 (Ill. App. Ct. 2001) (*Gibbs*). In

*Gibbs,* the court found that county sheriff's deputies, including correctional officers, were eligible for disability benefits because all "deputies" were considered law enforcement officers. *Gibbs,* 760 N.E.2d at 1053. Plaintiff contends that Verner and Cerami are considered law enforcement officers and have the same duties and authorities as the police.

In reliance on the determination that Defendants have the same enforcement power as police officers, Pineda contends that Verner and Cerami were acting under the color of the law when they beat him up. Plaintiff relies on *Pickrel v. Springfield,* 45 F.3d 1115 (7th Cir. 1995) (*Pickrel*). In *Pickrel,* the Seventh Circuit reversed the district court's decision to dismiss Section 1983 claims because it was possible for the plaintiff to show that an off-duty police officer was acting under the color of the law. *Pickrel,* 45 F.3d at 1119. Plaintiff claims that the "color of the law" issue is highly fact-specific, and his claim should not be dismissed without the opportunity to complete discovery in order to extract all the facts regarding Defendants' actions.

Defendants assert that Plaintiff has failed to allege facts that would allow a finding that Cerami and Verner were acting under the color of the law. Their contention is that Verner's and Cerami's conduct was not related in any way to their duties as correctional officers, but they were acting solely in their capacity as security guards. Defendants rely on *Lyons v. Adams,* 257 F. Supp. 2d 1125 (N.D. Ill. 2003) (*Lyons*), where the court found that insufficient facts existed on summary judgment that would suggest that the encounter between the off-duty police officers and the patron was anything more than a bar fight. *Lyons,* 257 F. Supp. 2d at 1132. The court specifically noted that the off-duty officers did not identify themselves as police officers, display their badges, or inform Lyons that he was under arrest; thus, their actions were "indistinguishable

4

from those of private actors that have engaged in a brawl." *Lyons*, 257 F. Supp. 2d at 1132. Defendants contend that Plaintiff puts forth no allegations that Cerami and Verner were acting in a way that was anything other than within their own personal capacity as bouncers, unrelated to their duties as correctional officers.

To establish a civil claim pursuant to Section 1983, Plaintiff must show that at the time of the incident "(1) [the plaintiff] was deprived of a federal right and (2) that the deprivation was imposed upon him by one or more persons acting under color of state law." *Ienco v. Chicago*, 286 F.3d 994, 998 (7th Cir. 2002) (*Ienco*). A determination that an individual acts under the color of the law turns largely on the "nature of the specific acts the police officer performed." *Pickrel*, 45 F.3d at 1118. "The acts of officers in the ambit of their personal pursuits are plainly excluded" from what is meant by under the color of the law. *Screws v. United States*, 325 U.S. 91, 111 (1944). Thus, the correct "inquiry is whether the police officer's actions related in some way to the performance of a police duty." *Gibson v. Chicago*, 910 F.2d 1510, 1517 (7th Cir. 1990) (*Gibson*). "To convert an off-duty status to one where the officer was acting under the color of the law, the off-duty officer must purport to exercise police authority in some manner, such as flashing a badge, identifying himself as a police officer, placing an individual under arrest, or performing a duty imposed by police department regulations." *Mendez v. Village of Tinley Park*, 2008 WL 427791 (N.D. Ill. 2008) (citing *Rivera v. La Porte*, 896 F.2d 691, 696 (2d Cir. 1990)). Under Illinois law, a correctional officer for the Cook County Sheriff's Office is

entrusted with the same state authority as a law enforcement officer. *See Gibbs*, 760 N.E.2d at 1052. Thus, the analysis for determining whether an off-duty correctional officer is under the color of the law is the same as that for determining whether an off-duty police officer acts under the color of the law.

The key inquiry is whether the nature of the specific acts performed by Defendants were in some way related to their authority as correctional officers/police officers. *See Pickrel*, 45 F.3d at 1118. The facts alleged by Pineda are enough to establish a claim that Defendants were acting under the color of the law. The cases cited by Defendants in support of their Motion to Dismiss are decisions surrounding summary judgment in which the records were sufficiently more developed. *See Lyons*, 257 F. Supp. 2d at 1133; *see also Zienciuk v. Chicago*, 2002 WL 1998309 *6 (N.D. Ill. 2002). Drawing all inferences in favor of Plaintiff, it is possible that Plaintiff could prove through the development of the facts that Defendants' conduct amounted to actions within their official state authority. The fact that Cerami and Verner were also acting within their authority as bouncers for a private establishment does not preclude the conclusion that they were also acting under the color of the law. *See Padin v. O'Connor*, 1998 WL 246437 *4 (N.D. Ill. 1998) (court finds that although the off-duty police officer was acting in his personal interest to protect his home, it does not preclude a finding that he was also acting within his authority as a state actor by apprehending a potential criminal). Because Pineda has alleged conduct that could be related to the conduct of a law enforcement officer, it would be inappropriate to dispose of the case at this early stage of litigation. *See Coles v. Chicago*, 361 F.

Supp. 2d 740, 747 (N.D. Ill. 2005) (concluding that a determination of whether a state actor was acting under the color of the law is a "highly fact specific inquiry"). Accordingly, Pineda's claim against Cerami and Verner survives Defendants' Motion to Dismiss on this aspect of Count II.

### Count II – Section 1983 Claim against Defendant Arteaga

Plaintiff also contends that Arteaga is liable to him under Section 1983 because Arteaga acted under the color of the law by being a willing participant in the obstruction of Pineda's constitutional rights. Defendants contend that the complaint makes no allegations that would sufficiently plead that Arteaga's actions are connected to the actions of Cerami and Verner for purposes of making a private actor liable under Section 1983.

A private actor acts under the color of the law if the plaintiff can establish that "(1) the private individual and a state official reached an understanding to deprive the plaintiff of her constitutional rights, and (2) the private individual was a willful participant in joint activity with the state or its agents." *Thurman v. Homewood*, 446 F.3d 682, 687 (7th Cir. 2006). It is well settled that a private employer may not be held vicariously liable under Section 1983 unless the plaintiff can show that the employer engaged in joint action with the state or its agents. *Crenshaw v. Rivera*, 2009 WL 377985 *10 (N.D. Ind. 2009) (*Crenshaw*). In addition, "the plaintiff must demonstrate that the private employer has in place an impermissible policy or a constitutionally forbidden rule or procedure, . . . [which is] the moving force of the constitutional deprivation." *Crenshaw*, 2009 WL 377985 *10 (holding that because the plaintiff could not show that the employer had a policy in place, the plaintiff's claim that the employer was liable under Section 1983 fails as a matter of law).

7

First, the cases relied on by Plaintiff, supporting his argument that by hiring Cerami and Verner, Arteaga was acting under the color of the law, are distinguishable from this case.[1] In all three cases, the courts found that because the private employers had the off-duty police officers in their uniform and with badges and other official police accessories, they were reaping benefits of the employees' state authority. In this case, however, Defendants did not wear police uniforms or have badges visible. Defendants were indistinguishable from the other security guards, whom were not off-duty correctional officers. Thus, Pineda has not sufficiently alleged that Arteaga was acting under the color of the law by hiring off-duty correctional officers as security guards.

Second, Pineda has not set forth any allegations that Arteaga was a willful participant in depriving Pineda of his constitutional rights under the Fourth or Fourteenth Amendments. Pineda does not allege that Arteaga instructed Verner and Cerami to beat up Pineda or even that Arteaga instructed Verner and Cerami to forcibly remove him from the bar. Therefore, even if Verner and Cerami were acting under the color of the law, there is no allegation that Arteaga's involvement as their employer and a private entity was enough to rise to the level of also acting under the color of the law.

Finally, Pineda fails to allege any facts suggesting that Arteaga had an impermissible policy or practice in place that is directly linked to the incident between Pineda and the security guards. The Complaint merely states that Defendants, including Arteaga, acted under the color

---

[1] In addition, it is important to note that a key element of *Crenshaw v. East Chicago*, 2008 WL 2557442, that Plaintiff relied on in his response was overturned on February 12, 2009. The court found in the subsequent case that the plaintiff failed to establish sufficient facts to show that the employer was liable under § 1983 because he pointed the court to no evidence that established that the constitutional deprivation was directly linked to a policy or practice of the private entity, which is an element of the cause of action. *Crenshaw*, 2009 WL 377985 *12.

of the law, and their actions were direct and proximate causes of injuries resulting from this incident. At most, this suggests that Arteaga was involved in this one incident, which is not enough to suggest that a company policy was linked to the event.

Because Plaintiff has failed to allege sufficient facts that could lead to the inference that Arteaga is liable under Section 1983, dismissal of Count II as to Arteaga is warranted.

Defendants' basis for moving to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is that the federal claims under Section 1983 should be dismissed under Fed. R. Civ. P. 12(b)(6). However, as stated above, Plaintiff has established a valid claim against Verner and Cerami under Section 1983; therefore, this basis for dismissal is insufficient.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Count II is granted as to the Section 1983 claim against Arteaga but denied as to the claim against Verner and Cerami. Defendants' Motion to Dismiss the Complaint as a whole pursuant to Fed. R. Civ. P. 12(b)(1) is denied. Plaintiff may file an amended complaint against Arteaga within thirty days of the date of this order if Plaintiff can do so pursuant to the requirements of Federal Rule of Civil Procedure 11.

Date: April 23, 2009

JOHN W. DARRAH
United States District Court Judge