UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MIGUEL PINEDA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 08-cv-3437 |
| v. | ) |
| | ) Judge John W. Darrah |
| JORGE ARTEAGA CORP., d/b/a | ) |
| Guadalajara Restaurant; JOHN VERNER; | ) |
| and MICHAEL CERAMI, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The Plaintiff, Miguel Pineda, brings this Complaint against two individual security officers and the restaurant owner who employed them for an alleged beating that Plaintiff suffered at the Guadalajara Restaurant on August 25, 2007. The restaurant owner, Jorge Arteaga Corporation ("Arteaga"), moves to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff fails to state a claim upon which relief can be granted. For the reasons stated below, Arteaga's Motion is granted.

## BACKGROUND

The following facts are taken from Plaintiff's Second Amended Complaint and are deemed true for purposes of this Motion to Dismiss. In the early-morning hours of August 25, 2007, Plaintiff was a patron at Arteaga's Guadalajara Restaurant when another restaurant patron assaulted him. Subsequently, two members of the restaurant security staff, Defendants John Verner and Michael Cerami, approached Plaintiff. (At

the time of the incident, Verner and Cerami were also employed as Cook County Correctional Officers, but they were not on duty while working on Arteaga's security staff.) Both were wearing black shirts with "Police" written on them. Verner and Cerami attacked Plaintiff, threw him down a flight of stairs and stole $300 cash from his wallet. Plaintiff then left the restaurant premises and called the Berwyn Police Department to report the incident. At the Department's request, Plaintiff returned to the restaurant. Verner and Cerami identified themselves to the Berwyn police officers as Cook County Correctional Officers and provided their officer star numbers. Plaintiff alleges that throughout the incident, Verner and Cerami were acting under color of law and within the course and scope of their employment with Arteaga.

On June 13, 2008, Plaintiff initially filed his Complaint, asserting claims of battery and violation of rights under 42 U.S.C. § 1983 against all Defendants. On April 23, 2009, the § 1983 claim against Arteaga was dismissed because Plaintiff failed to allege sufficient facts that could lead to the inference that Arteaga acted under color of law, acted as a willful participant in depriving Plaintiff of his constitutional rights, or had an impermissible policy or practice in place that was directly linked to the incident in question.

On July 23, 2009, Plaintiff filed his first amended complaint, which he later voluntarily dismissed. On September 19, 2009, with leave of the Court, Plaintiff filed a Second Amended Complaint, re-alleging his § 1983 claim against Arteaga and attempting to cure the deficiencies identified by the Court in the order dismissing the original complaint. Plaintiff now alleges that Arteaga was a willing participant in the violation of

2

Plaintiff's rights and that Arteaga hired off-duty officers because they conveyed the lawful authority of sworn officers. Plaintiff also alleges that Arteaga had in place one or more *de facto* policies and procedures that resulted in deliberate indifference to Plaintiff's constitutional rights, including a willful and wanton failure to train its security staff, and that those policies and procedures were the "driving force" behind Verner's and Cerami's actions. Plaintiff also alleges that Arteaga knew that the off-duty officers it employed used excessive force and made false arrests prior to the instance involving Plaintiff but "turn[ed] a blind eye" to their behavior. Arteaga argues that the allegations are still insufficient to state a claim and moves to dismiss Plaintiff's renewed § 1983 claim against Arteaga.

## LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint." *Christensen v. County of Boone, Ill.*, 483 F.3d 454, 458 (7th Cir. 2007). In ruling on a motion to dismiss, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, the complaint must describe the claim in sufficient detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Bell Atlantic*) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations in the complaint "must plausibly suggest that the plaintiff

3

has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Bell Atlantic*, 550 U.S. at 555).

To state a valid claim under § 1983, a plaintiff must demonstrate: (1) that the defendants deprived him of a right secured by the Constitution or any law of the United States; and (2) that the deprivation of that right resulted from the defendants' acting under color of law. *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970)). Private individuals can be found to have violated § 1983 if they collaborated with state officials to deprive individuals of their constitutional rights. *Id.* But "the state must somehow be responsible for the allegedly unlawful actions taken by the private party." *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996) (*Wade*) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

## ANALYSIS

"It has long been established that there is no respondeat superior liability under section 1983." *Rodriguez v. Plymouth Ambulance Services*, 577 F.3d 816, 822 (7th Cir. 2009) (*Rodriguez*). Thus, Plaintiff must allege facts sufficient to show that Arteaga would be liable for its own actions, not those of the individual defendants.

Arteaga argues that Plaintiff does not sufficiently plead any set of facts that would warrant an inference that Arteaga, a private party, acted under color of law. Arteaga also asserts that Plaintiff has not shown that Arteaga acted with an "impermissible policy" or had a "constitutionally forbidden" rule or procedure that was the "moving force of the constitutional violation." *See Iskander v. Vill. of Forest Park*, 690 F.2d 126, 128-29

4

(7th Cir. 1982) (citations omitted). In support of its color-of-law argument, Arteaga cites *White v. Cooper*, 55 F. Supp. 2d 848, 859 (N.D. Ill. 1999) (*White*), as requiring Plaintiff to demonstrate that some nexus exists between the conduct at issue and a state individual or entity. According to *White*, that nexus can be shown in one of three ways:

> This "nexus" test is met in one of three ways. First, plaintiff must show that the action of a private entity fulfilled an obligation of the state in such a way that it may be fairly treated as state action. Second, plaintiff may show that the state has exercised coercive power or has provided such significant encouragement, either overt or covert, that it compelled action on behalf of a private party. Simple authorization, approval of or agreement with the conduct of a private party is not sufficient to justify a finding that the party has acted under the color of state law. Third, a plaintiff may claim that a private party individual was performing a function which has traditionally been the sole prerogative of the state.

*White*, 55 F. Supp. 2d at 859 (citations and internal quotation marks omitted).

Arteaga alleges that the Second Amended Complaint contains insufficient facts to satisfy any of the three "nexus" tests laid out above. At best, argues Arteaga, Plaintiff merely submits a conclusory statement that Arteaga "acted under the color of state law" absent any supporting factual allegations. Plaintiff has not alleged that Arteaga fulfilled some obligation of the state in such a way that its conduct may be treated as state action for Arteaga's part in providing security in its own private restaurant. Nor has Plaintiff alleged that the state exercised coercive power, that it provided significant encouragement, or that it compelled Arteaga to act in any manner. And Plaintiff has not shown that Arteaga was performing a function that traditionally has been the sole prerogative of the state. Defendant notes that Plaintiff's Complaint does not indicate Arteaga played any role in the night of the occurrence other than employing Verner and Cerami. In short, Defendant contends that the facts provided in the Second Amended

5

Complaint fall far short of sufficiently establishing the "nexus" requirement such that a § 1983 action can lie against a private restaurant owner.[1]

Plaintiff argues that Arteaga acted under color of law by voluntarily undertaking the State's police responsibilities. He relies on the Seventh Circuit's decision in *Rodriguez*, which identifies four possible tests, gleaned from various Supreme Court cases: (1) the "symbiotic relationship" test; (2) the "state command and encouragement" test; (3) the "joint participation" doctrine; and (4) the "public function" test. 577 F.3d at 823-24 & nn.8-11. The tests set forth in *Rodriguez* appear to subsume those identified in *White*. In any event, Plaintiff asserts only that it has satisfied the "public function test" of proving that Arteaga acted under color of law. (*See* Pl. Resp. Br. at 7 n.2 ("As these tests 'lack rigid simplicity,' the Plaintiff's claims may fall under more than one of these tests, or even one not specifically mentioned by the Seventh Circuit. For purposes of this motion, the Plaintiff simply notes the Section 1983 theory in this case clearly meets the 'public function test.'").)

According to Plaintiff, *Rodriguez* supports finding that Arteaga's act of hiring off-duty law-enforcement officers as security staff constitutes a voluntary undertaking of the public function of policing, which subjects Arteaga to liability for any constitutional violations resulting from that act. But Plaintiff reads too much into *Rodriguez*. Plaintiff relies on a portion of *Rodriguez* stating that courts have found "the delegation of the

---

[1] Arteaga then devotes considerable space in its brief to arguing that Plaintiff's Second Amended Complaint also fails to allege facts that would establish a civil conspiracy between Arteaga and a state actor, as if this is an argument that is wholly separate from the tests set forth in *White*. At any rate, Plaintiff affirmatively states that he has not alleged a § 1983 civil conspiracy. (*See* Pl. Resp. Br. at 8 n.4.)

6

[public] function should be accompanied with a delegation of constitutional responsibilities." 577 F.3d at 826 (citation omitted). In *Rodriguez*, a prisoner brought § 1983 claims against various individuals and entities after contracting a staph infection. *Id.* at 819-20. One defendant, Waupun Memorial Hospital, allegedly had an ongoing relationship with prison authorities for the care of prisoners. *Id.* at 831. In applying the "public function" test, the Seventh Circuit found that "the trilateral relationship of the state, Waupun Memorial and the prisoner-patient demonstrates that the provider was acting in the stead of the state in providing medical care to" the plaintiff. *Id.* Under those circumstances, the plaintiff had alleged that his treatment at the private hospital "was tied to the state's responsibility for his overall medical care." *Id.*[2]

Plaintiff asserts that *Rodriguez* dictates that "the hiring of law enforcement officers is sufficient for a corporation to act under color of law, as this satisfies the 'public function test,' *i.e.*, the private corporation voluntarily took on a public function (policing), for its benefit, and with that comes Constitutional responsibilities." (Pl. Resp. Br. at 7-8 (citing *Rodriguez*, 577 F.3d at 823).) But Plaintiff's argument reverses the *Rodriguez* rationale. The Seventh Circuit there held that color of law can be created by the State's *delegation* of a public function, not by a private party's limited unilateral assumption of that function as Plaintiff claims here.

---

[2] Plaintiff incorrectly states that the Seventh Circuit reversed the district court's dismissal of a § 1983 claim against Waupun Memorial. (*See* Pl. Resp. at 7.) Although the Seventh Circuit found the plaintiff had properly alleged that the hospital was acting under color of law, it nonetheless held that his maltreatment was not due to any policy at the hospital and affirmed the district court's dismissal. *Id.* at 832.

Importantly, the Seventh Circuit has specifically noted that it has rarely found the "public function" test met in modern times. *Rodriguez*, 577 F.3d at 824 n.11 (citing *Vickery v. Jones*, 100 F.3d 1334, 1345 (7th Cir. 1996)). Plaintiff nonetheless argues that two district court cases fall within *Rodriguez's* ambit and support Plaintiff's public-function theory: *Groom v. Safeway, Inc.*, 973 F. Supp. 987 (W.D. Wash. 1997) (*Groom*), and *Woods v. Clay*, No. 01 C 6618, 2005 WL 43239 (N.D. Ill. Jan. 10, 2005) (*Woods*).

In *Groom*, the plaintiff alleged that an off-duty police officer who worked for the defendant supermarket wrongfully detained her in handcuffs after falsely suspecting her of shoplifting. *Groom*, 973 F. Supp. at 989. At the time, the officer was wearing his Seattle Police Department uniform and was armed. *Id.* A jury awarded damages against the supermarket. *Id.* In denying the plaintiff's post-trial motion to dismiss the claims, the *Groom* court held that the defendant corporation "did more than cloak itself with the authority of the state: it hired an instrument of the state's power. Officer Hori, his uniform, his badge, and his gun were all hired to serve [the defendant's] goal of deterring theft in its stores." *Id.* at 991. The court found that the private entity and state agent had an overlapping identity and interest sufficient to bring the private entity's actions under color of state law. *Id.*

In *Woods*, the defendant bar hired off-duty police officers to work security in addition to non-police employees. 2005 WL 43239, at *1. The plaintiff was involved in an altercation and was taken to the ground and arrested by one of the off-duty officers. *Id.* at *4-5. The plaintiff then asserted § 1983 claims against the bar, in addition to the individual officers and the city that employed them as police officers. *Id.* at *1. The

8

off-duty officers wore police-issue black "tactical" outfits, carried police-issue guns and batons, and wore police badges. *Id.* at \*2. They were employed to check the identification of patrons, check for weapons, and perform pat-downs. *Id.* The court found that the defendant had hired the police officers to "function as police officers and to demonstrate to its patrons by virtue of the outfits, weapons, and badges worn by the officers . . . that the officers were protecting the premises and patrons" and denied the defendant's motion for summary judgment. *Id.* at \*21.

In contrast, to *Groom* and *Woods*, this case does not involve uniformed, armed off-duty police officers. Plaintiff merely alleges that the officers wore black shirts that said "police" on them and that Arteaga had authorized them to display badges, guns, handcuffs, and other indicia of law enforcement" at other times (2d Am. Compl. ¶ 20); he does not allege that they ever did display badges, guns, and handcuffs during the event in question or at any other time. Nor does Plaintiff allege he was placed under arrest. The facts of this case are thus materially distinguishable from those in *Groom* and *Woods*.

More importantly, *Groom* and *Woods* are not binding on this Court. To the extent those decisions indicate that a private actor can unilaterally cloak itself in state power such that his actions can fairly be attributed to the state, this Court respectfully disagrees with those decisions. Plaintiff has not identified Seventh Circuit or Supreme Court precedent to support its reverse reading of *Rodriguez*, and this Court is aware of none. *Rodriguez* specifically states, "At its most basic level, the state action doctrine requires that a court find such a 'close nexus between the State and the challenged action' that the challenged action 'may be fairly treated as that of the State itself.'" 577 F.3d at 823

9

(quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). *Rodriguez* does not support Plaintiff's argument.

Arteaga asserts that the Seventh Circuit's decision in *Wade* is more instructive. In *Wade*, the plaintiff was shot by a private security guard employed by a private security company at a Chicago Housing Authority building. 83 F.3d at 906. Wade argued that the private security guard's powers were extensions of the state police powers and that the security guard was therefore acting as a state actor when he shot Wade. *Id.* The court disagreed, noting that the case was not one in which the state had delegated its entire police power to a private force and that none of the powers employed by defendants had been exclusively reserved to the police. *Id.* at 905-06. Therefore, the defendant officer was not a state actor and not subject to § 1983 liability. *Id.* at 907.

In the instant case, there are no allegations in the Second Amended Complaint that Arteaga employed a security staff to be its own private police force, that the security staff was the exclusive police force at the Guadalajara Restaurant to the exclusion of the Berwyn Police Department, or that Arteaga authorized its security staff to exercise all powers and responsibilities of a police force. In short, Arteaga did not employ a security staff that performed functions exclusively reserved to the police and, thus, did not voluntarily undertake a delegated public function.

As pled, the Second Amended Complaint fails to establish that Arteaga acted under color of law under the "public function" test or any other test. Therefore, the Court does not reach Arteaga's second argument that Plaintiff failed to allege that Arteaga acted with an impermissible policy or constitutionally forbidden rule or procedure.

10

## CONCLUSION

For the reasons stated above, Arteaga's Motion to Dismiss Count IV of the

Second Amended Complaint is granted.  Count IV, asserting a § 1983 claim against

Arteaga, is hereby dismissed.

Date: 1-28-10

JOHN W. DARRAH
United States District Court Judge

11